IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| SHERRY L. DAVENPORT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:12cv1315 (LMB/JFA) |
| | ) | |
| CAROLYN W. COLVIN[1], | ) | |
| Acting Commissioner of the | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## REPORT AND RECOMMENDATION

In accordance with an Order entered on January 17, 2013 (Docket no. 8), this matter is

before the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B)

on cross-motions for summary judgment.[2] Pursuant to 42 U.S.C. § 405(g), plaintiff Sherry

Davenport ("plaintiff") seeks judicial review of the final decision of the Commissioner of the

Social Security Administration ("SSA"), finding that plaintiff was overpaid $11,237.00 in

Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42

U.S.C. § 401, *et seq.*, for the months November 2008 through December 2009. The

Commissioner's final decision is based on findings by the SSA Appeals Council, following

review of the Administrative Law Judge ("ALJ") decision, that: (1) the amount of plaintiff's DIB

is subject to the Windfall Elimination Provisions ("WEP") and the Public Disability Benefit

("PDB") offset provisions beginning in November 2008; and (2) plaintiff was overpaid

---

[1] Pursuant to Fed. R. Civ. P. 25(d), as Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013, she should be substituted for Michael J. Astrue as the defendant in this suit.

[2] The Administrative Record ("AR") in this case has been filed under seal, pursuant to Local Civil Rules 5 and 7(C). (Docket no. 6). In accordance with these rules, this Report and Recommendation excludes any personal identifiers such as plaintiff's social security number and her date of birth. Given the nature of the issue presented in this case, a discussion of the plaintiff's medical information is not necessary.

$11,237.00 in DIB due to the WEP and PDB offsets for the months November 2008 through December 2009.[3]

For the reasons discussed below, the undersigned recommends that plaintiff's motion for summary judgment (Docket no. 11) be denied; the Commissioner's motion for summary judgment (Docket no. 12) be granted; and the Commissioner's final decision be affirmed in part.

## PROCEDURAL HISTORY

### SSA Proceedings

Plaintiff filed her initial application for DIB in July 2008. (Administrative Record ("AR") 19-23). Plaintiff's alleged onset date for her disability was January 1, 2008. (AR 19). On August 5, 2008, plaintiff received a Notice of Award from the SSA finding plaintiff disabled as of December 21, 2007 under SSA rules.[4] (AR 26-28). Plaintiff was also notified that she was entitled to a monthly disability benefit of $887 per month effective June 2008. (AR 26).

On November 22, 2008, plaintiff was granted a civil service retirement system disability annuity ("civil service disability annuity" or "CSRS disability annuity") and was credited with a total of 31 years, 8 months of federal service in the annuity computation. (AR 71). For November 2008, plaintiff's gross monthly annuity payment was $5,201.00 and her annuity payment rose to $5,227.00 starting in December 2008. (AR 9). November 2008 was the first month that plaintiff was receiving both DIB and the civil service disability annuity. (AR 9). By a Notice of Change of Benefits dated August 30, 2009, plaintiff was informed that the SSA was applying the WEP offset to her SSA benefit payment since she was receiving both DIB and a pension based on work not covered by Social Security. (AR 106-108). The WEP offset reduces

---

[3] Plaintiff did not file a claim for Supplemental Security Income payments. *See* AR 19.

[4] The SSA specifically noted that the onset date of December 21, 2007 was "different from the date given on the application." (AR 26).

the amount of a Social Security benefit payment when a person is receiving a pension from employment in which the person did not pay Social Security taxes at the same time as that person has qualified for a Social Security retirement or disability benefit. (AR 120). The application of the WEP reduced plaintiff's monthly DIB entitlement to $570 per month, which the SSA retroactively applied back to November 2008. (AR 106, 108).

The SSA also determined that plaintiff's DIB was subject to a PDB offset as a result of the civil service disability annuity (a federal pension payment) she was receiving. (AR 116). By issuance of an Important Information dated January 29, 2010, the SSA notified plaintiff that her public disability payment of $5,227.00 a month had to be taken into account in calculating her Social Security DIB. (AR 109-12). The SSA stated that "[b]ecause of this payment, we changed your monthly Social Security benefit to $31.20 beginning December 2008." (AR 109). On February 12, 2010, plaintiff filed a request for reconsideration of the SSA's reduction of her Social Security benefit to $31.00 per month. (AR 74-75, 113-14). Plaintiff was also sent a Notice of Change in Benefits dated February 24, 2010 informing her that her Social Security DIB had been reduced to $31.00 per month to be applied retroactively beginning in December 2008 "because of the receipt of workers' compensation payments." (AR 116-18).

In response to plaintiff's request, the SSA issued a Notice of Reconsideration dated August 11, 2010 stating that "[s]omeone who did not make the first decision reviewed your case, including any new facts you gave us" and offering reasons for its amended decision. (AR 93-100). Having reviewed the overpayment calculation on plaintiff's record, the SSA informed plaintiff that the "revised" total overpayment of Social Security DIB was $11,237.00. (AR 99). This calculation was based upon total actual DIB payments of $12,303.00 and total benefits due of $1,066.00. (AR 99). However, the SSA issued a Notice of Overpayment on August 16, 2010

stating that the total amount of plaintiff's overpayment was $7,577.00 (not $11,237.00 as stated in the Notice of Reconsideration issued the previous week). (AR 38-40). On September 2, 2010, plaintiff filed a request that her case be heard by an Administrative Law Judge indicating that she believed the SSA's determination that an overpayment of $7,577.00 had been made was incorrect. (AR 41-43). Also on September 2, 2010, plaintiff made a payment of $1,022.00 to the SSA acknowledging that she was overpaid DIB taking into consideration the WEP offset. (AR 41, 141).

On November 4, 2010, ALJ Arthur convened a hearing at which plaintiff represented herself. (AR 142-164). On January 25, 2011, the ALJ issued a decision ruling that plaintiff was liable for overpayment in the amount of $7,557.00 pursuant to Section 204(a)(1)(A) of the Social Security Act, that she had paid $1,022 towards this amount, and that the remaining balance of her overpayment was $6,535.00. (AR 16-18). The ALJ noted that plaintiff had indicated at the hearing that she felt she was being charged twice because the Agency was reducing her benefits based on the government pension offset (PDB offset) and the WEP offset. (AR 17). The ALJ found, however, that the record only showed a deduction for the WEP. *Id.* Accordingly, the ALJ found that the overpayment amount of $7,557.00 derived only from the WEP offset and not the PDB offset. *Id.* The ALJ also found that plaintiff was at fault in creating the overpayment. *Id.* On March 14, 2011, plaintiff filed a request for review of the ALJ's decision to the SSA Appeals Council. (AR 85-88).

On July 21, 2012, an office of the SSA unrelated to the Appeals Council issued an Important Information informing plaintiff that she owed $6,555.00 in overpayment to the SSA. (AR 133-35). On August 14, 2012, the Appeals Council notified plaintiff that it had granted her request for review of the ALJ's decision. (AR 129-32). In that notice, the Appeals Council

informed the plaintiff that it proposed to issue a decision finding that the plaintiff had been overpaid $11,237.00 in disability benefits for November 2008 through December 2009 and vacating the ALJ's finding that the plaintiff was at fault in causing the overpayment. (AR 8, 130). The Appeals Council simultaneously notified plaintiff that it would consider any comments or new and material evidence plaintiff submitted within 30 days from the date of the notice. (AR 8, 131-132). On September 7, 2012, plaintiff responded to the notice issued by the Appeals Council and provided additional information to be considered by the Appeals Council in its final review and decision. (AR 128).

On September 21, 2012, the Appeals Council issued a final agency decision considering the issue of whether plaintiff had been overpaid disability benefits and if so, the amount and months she was overpaid. (AR 4-11). The Appeals Council rejected the ALJ's decision that plaintiff was overpaid $7,557.00. (AR 9). Instead, the Appeals Council favored the determination reached by the SSA in the Notice of Reconsideration dated August 11, 2010 that plaintiff was overpaid $11,237.00 in disability benefits for the period November 2008 through December 2009.[5] *Id.* The Appeals Council vacated the ALJ's finding that plaintiff was at fault in causing the overpayment based on its conclusion that this issue was not before the ALJ since there was no record that plaintiff had filed a waiver request and no waiver determinations were made by the SSA. *Id.* The Appeals Council also found that beginning in November 2008, plaintiff's DIB was subject to both the WEP and the PDB offset provisions, which accounted for the $11,237.00 overpayment that remains due. *Id.*

The Appeals Council's unfavorable decision constitutes the final decision of the Commissioner for purposes of review under 42 U.S.C. § 405(g).

---

[5] The Commissioner notes that the Appeals Council did not credit plaintiff for the $1,022 payment she made in September 2010, which would reduce the actual amount of her current debt to $10,215.00. (Docket no. 13 at 4).

**Proceedings in this Court**

On November 16, 2012, plaintiff *pro se* filed a timely civil action for review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). (Docket no. 1). The Commissioner filed an answer to plaintiff's complaint on January 15, 2013 (Docket no. 4) along with the Administrative Record (Docket nos. 5, 6). On January 17, 2013, the District Judge entered an Order stating that the case was appropriate for disposition on cross-motions for summary judgment and that upon consent of the parties, the case would be referred to a magistrate judge for entry of final judgment pursuant to 28 U.S.C. § 636(c). (Docket no. 8). The Order also provided that any party could withhold this consent without adverse substantive consequences, in which case the role of the magistrate judge would be limited to considering the motions for summary judgment and issuing a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). *Id.* The parties have not consented to the exercise of jurisdiction by a magistrate judge in this case.

On February 7, 2013, counsel entered an appearance on behalf of plaintiff. (Docket no. 10). On February 19, 2013, plaintiff filed her motion for summary judgment (Docket no. 11) along with a memorandum in support (Docket no. 11-1). Also on February 19, 2013, the Commissioner filed a motion for summary judgment (Docket no. 12) along with a memorandum in support (Docket no. 13) and a notice of hearing for March 22, 2013 (Docket no. 14). These motions were referred to the undersigned for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). On March 5, 2013, the Commissioner filed a memorandum in opposition to plaintiff's motion for summary judgment (Docket no. 15) and plaintiff filed her memorandum in opposition to the Commissioner's motion for summary judgment (Docket no. 16). On March 22, 2013, counsel for the plaintiff and counsel for the

Commissioner appeared at a hearing before the undersigned and presented argument on the cross-motions for summary judgment.

## PROCEEDINGS BEFORE THE SSA

**Hearing before the ALJ on November 4, 2010**

On November 4, 2010, plaintiff appeared without counsel before ALJ Arthur. (AR 142-164). Plaintiff testified that she was not questioning the overpayment resulting from the SSA's application of the WEP. (AR 148). Plaintiff testified that she did object to the overpayment insofar as it resulted from counting her "retirement" as public disability (*i.e.*, application of the PDB offset). (AR 149). Plaintiff testified that her "retirement" was based on her earnings from her work with the federal government. (AR 149). Plaintiff also testified that she had to "go under what they call disability simply because there wasn't any window" for her to retire. (AR 149). Plaintiff testified that she didn't originally intend on filing for Social Security DIB, but after being encouraged by the "Maryland office," she decided to do so. (AR 149). Plaintiff testified that she would not have done so had she known that the SSA was going to consider her "retirement" to be a public disability benefit. (AR 149).

Plaintiff testified that she believed that application of the WEP and the PDB offset provisions was the SSA's way of "nailing me twice and taking it all." (AR 152). Plaintiff testified that if she had known that both of these offsets would be applied to her benefits, she would not have applied for the benefits in the first place. (AR 152).

Plaintiff testified that because she retired early, she was not receiving as much of her "retirement fee" from the government. (AR 155). Plaintiff further testified, however, that if she had to pay back the full amount of her overpayment, her assets combined with her husband's assets would be sufficient to pay that amount. (AR 158-159).

**ALJ Decision Finding Plaintiff Liable for Overpayment of $7,557.00**

In his decision of January 25, 2011, the ALJ made three specific findings relevant to the issues presented by the parties' cross-motions for summary judgment: (1) that plaintiff was overpaid benefits in the amount of $7,557.00 during the period "January 1, 2002 to January 1, 2002 [sic]"; (2) that plaintiff was at fault for creating the overpayment; and (3) that plaintiff, having already paid $1,022.00, remained liable for repayment of $6,535.00. (AR 16-18).

The ALJ summarized the pertinent applicable law to plaintiff's case by stating that

> Under the windfall elimination provision[6] of 20 CFR 404.408, disability insurance benefits are reduced when the claimant also received other periodic disability benefits provided under Federal, State or local laws or plans based on total or partial disability (whether temporary or permanent). The reduction amount is calculated to that total combined benefits do not exceed eighty percent of average current earnings. (20 CFR 404.408(c)).

(AR 17). In finding that plaintiff was overpaid benefits in the amount of $7,557.00, the ALJ indicated that the crux of plaintiff's case was how the "average current earnings" figure was reached. *Id.* The ALJ concluded that despite plaintiff's assertion that the eighty percent figure should be calculated against approximately $123,000 in earnings, the SSA was correct in using a lower figure because plaintiff did not have $123,000 in *covered* earnings. *Id.* Rather, the ALJ found that plaintiff's 2007 earnings consisted of $57,213.68 from *covered* Social Security wages and $42,213.68 in *non-covered* earnings. *Id.* Accordingly, the ALJ found that the SSA was correct in using the $57,213.68 figure in determining plaintiff's average current earnings.[7] (*Id.*). The ALJ concluded that the SSA had correctly calculated eighty percent of plaintiff's monthly

---

[6] The ALJ erroneously used the term "windfall elimination provision" in connection with his discussion of 20 C.F.R. § 404.408, the section setting out the rules for the PDB offset. The rules for the WEP offset are available at 20 C.F.R. § 404.213 and 42 U.S.C. § 415(a)(7).

[7] Under 20 C.F.R. § 404.408(c)(3), the average current earnings figure is based on the individual's most advantageous income year. Plaintiff and the SSA agreed that plaintiff's most advantageous income year was 2007. (AR 17).

average current earnings to be $3,813.60 and correctly reduced her DIB to prevent her combined benefits from exceeding that amount. *Id.* The ALJ then (incorrectly) stated that the record showed that only the WEP offset had been applied to plaintiff's benefits and that the overpayment amount of $7,557.00 did not derive from any government pension offset factors. *Id.*

In finding that the plaintiff was at fault in creating the overpayment, the ALJ acknowledged plaintiff's testimony that she would have made different choices if she had realized the consequences of her financial choices at the time she made them. (AR 17). However, the ALJ found that because plaintiff could have independently informed herself of the best course of action at the time she was making those decisions, he would still attribute fault to plaintiff for creating the overpayment. *Id.*

Finally, in finding that the plaintiff was liable for repayment in the amount of $6,535.00, the ALJ found that no evidence had been submitted to him that indicated that repayment would defeat the purposes of the Social Security Act. (AR 18). The ALJ urged the SSA Processing Center to work with plaintiff in creating a payment schedule whereby plaintiff could repay her remaining debt of $6,535.00. *Id.*

Accordingly, the ALJ found that plaintiff was liable for overpayment in the amount of $7,557.00 pursuant to Section 204(a)(1)(A) of the Act and that having already remitted a check for $1,022.00, plaintiff's remaining debt was $6,535.00. (AR 18).

**Decision of the Appeals Council**

In its decision of September 21, 2012, the Appeals Council found that the evidence in plaintiff's record supported the SSA's August 11, 2010 Reconsideration Determination that plaintiff had been overpaid $11,237.00 in disability benefits for the months November 2008

through December 2009 as a result of application of the WEP and PDB offsets rather than the finding of the ALJ that plaintiff was overpaid $7,557.00 in disability benefits from January 1, 2002 through January 1, 2002. (AR 9). The Appeals Council also vacated the ALJ's finding that plaintiff was at fault in causing the overpayment based on its conclusion that the issue of fault was not before the ALJ. *Id.*

The Appeals Council made two findings. First, the Appeals Council found that calculation of plaintiff's primary insurance amounts and monthly benefit amounts were subject to both the WEP and the PDB offsets beginning in November 2008. (AR 9). Second, the Appeals Council found that due to application of the WEP and PDB offsets for the months November 2008 through December 2009, plaintiff had been overpaid $11,237.00 in disability benefits. *Id.*

Accordingly, the Appeals Council found that plaintiff was overpaid $11,237.00 in disability benefits for the months November 2008 through December 2009 due to the application of the WEP and PDB offset provisions. (AR 10).

## DISCUSSION

### Questions Presented

The questions presented by these cross-motions for summary judgment are whether the Commissioner applied the correct legal standard in applying both the WEP and the PDB offsets to plaintiff's DIB entitlement as a result of plaintiff's civil service retirement annuity received on account of disability and if so, whether the Commissioner's final decision that plaintiff owes an overpayment of $11,237.00 for the period from November 2008 to December 2009 is supported by substantial evidence.

10

**Scope of Review and Applicable Legal Standards**

In most social security cases reviewing the Commissioner's final decision regarding benefits, this Court is limited to determining whether that decision was supported by substantial evidence and whether the proper legal standards were applied in evaluating the evidence. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion; it is more than a mere scintilla but less than a preponderance. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

Where the issue presented by a social security case reviewing the Commissioner's final decision is a legal question, "a reviewing court must be free to disregard the legal conclusions of the Secretary if it feels they are erroneous." *Thompson v. Weinberger*, 395 F. Supp. 1102, 1104-05 (E.D. Va. 1975) (citing *Kasey v. Richardson*, 462 F.2d 757 (4th Cir. 1972)). Though the legal determination of the Commissioner will be accorded "considerable weight," a more rigorous form of judicial scrutiny is appropriate. *Id.*; *see also Whitman v. Weinberger*, 382 F. Supp. 256, 264 n.9 (E.D. Va. 1974) (finding agency secretary's legal conclusions are afforded "broader judicial review than are findings of fact"). Courts within the Fourth Circuit have widely held that where a question is presented regarding the interpretation of federal law, the reviewing court evaluates the agency decision for an incorrect application of the law. *McKnight v. Schweiker*, 516 F. Supp. 1102, 1105 (D. Md. 1981); *see also Cantrell v. Schweiker*, 532 F. Supp. 799, 800 (W.D. Va. 1982) (finding question of offset under 42 U.S.C. § 424a is a question of law requiring the reviewing court to determine whether legal conclusions are erroneous).

## ANALYSIS

**Plaintiff's Motion for Summary Judgment and Opposition to the Commissioner's Motion**

Plaintiff argues that a civil service retirement system annuity that is received by an individual following a declaration of a disability should not render Social Security benefits subject to concurrent WEP *and* PDB offsets.

Plaintiff first contends that there is no definitive law or precedent available that establishes that concurrent application of the WEP and the PDB offsets is permissible. (Docket no. 16 at 2). Plaintiff contends that her monthly retirement annuity, attributable to a civil service retirement system accrual of benefits following a disability, should not subject her DIB to the PDB offset.[8] (Docket no. 11-1 at 6). In particular, plaintiff disputes whether her underlying benefits were attributable to workers' compensation or a "total or partial disability" such that those benefits would constitute a qualifying "periodic benefit" under 20 C.F.R. § 404.408(a)(2)(i). Plaintiff argues that though she became eligible for the disability annuity due to her disabled status, her disability annuity was based on credited federal service of 31 years and 8 months. (Docket no. 11-1 at 7).

Plaintiff further contends that her disability annuity is critically different from an annuity based upon a compensable injury or condition arising out of employment (to which 20 C.F.R. § 404.408(a)(2)(i) would clearly apply). (Docket no. 11-1 at 7). This is because plaintiff asserts that her disability annuity is part of a contributory retirement plan whereby she and the government contributed to a fund and participants were "guaranteed" a return of an amount at least equal to their contributions, which was to be returned either as an annuity or a lump sum refund. (Docket no. 11-1 at 7-8). Plaintiff argues that there are numerous federal workers' compensation programs, including the Federal Employee's Compensation Act and the

---

[8] Plaintiff does not contest the application of the WEP offset to her DIB. (Docket no. 11-1 at 4).

Longshore and Harbor Workers' Compensation Act that generally serve to compensate individuals for injuries that arise out of or in the course of employment or due to occupational diseases caused by conditions characteristic of a particular trade, occupation, or process. (Docket no. 11-1 at 8-9). Plaintiff suggests that her disability annuity is dissimilar because those benefit payments lack a contributory aspect and are structured differently from the civil service retirement annuity plaintiff receives. Accordingly, plaintiff contends that the SSA should have concluded that the PDB offset under 20 C.F.R. § 404.408(a)(2)(i) should *not* have been applied to her DIB because she was not concurrently entitled to a "periodic benefit (including workers' compensation or any other payments based on a work relationship) on account of a total or partial disability (whether or not permanent) under a law or plan of the United States, a State, a political subdivision, or an instrumentality of two or more of these entities." 20 C.F.R. § 404.408(a)(2)(i).

Plaintiff next argues that the Appeals Council failed to address its reasons for departing from the findings and decision of the ALJ, which did not apply both the WEP and the PDB offsets to plaintiff's DIB, and also mistakenly adopted new findings regarding the concurrent application of the WEP and the PDB offsets. (Docket no. 11-1 at 9-11). Plaintiff contends that in concurrently applying the WEP and PDB deductions, the Appeals Council also erroneously failed to apply the exception in 20 C.F.R. § 404.408(b)(2)(ii). (Docket no. 11-1 at 11). Plaintiff argues that even if a disability benefit is determined to subject a claimant's DIB to the PDB offset under 20 C.F.R. § 404.408(a)(2), section 404.408(b)(2)(ii) creates an exception that applies to plaintiff's civil service disability annuity. (Docket no. 11-1 at 12). Plaintiff contends that the exception applies to a public disability benefit payable to a public employee based on employment covered under Social Security. *Id.* Plaintiff argues that the exception applies to her

civil service disability annuity because plaintiff received the annuity as an employee who had over 31 years of federal service and was also credited with 102 quarters of Social Security covered income (in addition to portions of her federal service income that were not covered by Social Security). *Id.* Accordingly, plaintiff argues that the SSA should not have subjected her DIB to both the WEP and the PDB offsets. *Id.*

Plaintiff next argues that even if the Court decides that the WEP and PDB offsets can be concurrently applied to plaintiff's DIB under the applicable regulations, the substantial reduction of her Social Security benefits constitutes a systemic form of unlawful discrimination on the basis of her physical disability. (Docket no. 11-1 at 12). Plaintiff contends that this discrimination on the basis of her disability runs afoul of the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.*[9] Plaintiff asserts that she is being deprived of the same benefits that would be paid to other CSRS retirees that receive annuities not categorized as being on account of disabled status. (Docket no. 11-1 at 14).

Finally, plaintiff argues that despite the SSA's reliance on its Program Operations Manual System ("POMS"), a reading of the statutory and legislative history makes it clear that application of the PDB offset to plaintiff's DIB is inappropriate. (Docket no. 16 at 3). Citing *Richardson v. Belcher*, 404 U.S. 78 (1971), plaintiff argues that the regulatory and legislative history of this provision indicates that it was meant to apply to workers' compensation programs and not retirement annuity payments received on account of disability. (Docket no. 16 at 3-5).

---

[9] Section 504 of the Act provides

> No otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program ... conducted by any Executive Agency.

29 U.S.C. § 794(a).

**The Commissioner's Motion for Summary Judgment and Opposition to Plaintiff's Motion**

The Commissioner argues that substantial evidence supports the Appeals Council's conclusion that plaintiff owes an overpayment for the period from November 2008 to December 2009 of $10,215[10] based on the correct determination that the WEP and PDB offsets apply concurrently to plaintiff's DIB. The Commissioner contends that individuals may qualify for DIB in addition to benefits from other federal and state disability benefit programs. (Docket no. 13 at 5). The Commissioner asserts that the PDB offset in 42 U.S.C. § 424a(a) and 20 C.F.R. § 404.408 requires the SSA to reduce DIB payments when an individual like plaintiff is also entitled to periodic public disability benefits so that the combined amount of both benefits does not exceed eighty percent of the individual's average current earnings. *Id.*

First, the Commissioner argues that because plaintiff's civil service disability annuity was granted based on both her years of service *and* her disabled status, she cannot claim that it is not attributable to a total or partial disability, and application of the PDB offset to her DIB is required. (Docket no. 15 at 3). The Commissioner argues that if plaintiff had simply left her job without a disability, she would not have received benefits until age 62. (Docket no. 15 at 3). Thus, though the *amount* of her disability annuity is based on her years of service, the Commissioner contends that plaintiff's entitlement to annuity benefits at age 53 (her age when she separated from federal service) is attributable to her disability. (Docket no. 15 at 3-4).

Second, the Commissioner contends that plaintiff is incorrect that the exception for public disability benefits based on employment covered under Social Security in 20 C.F.R. § 404.408(b)(2)(ii) is applicable to her case. (Docket no. 15 at 4). The Commissioner asserts that this exception is derived from 42 U.S.C. § 424a(a)(2)(B)(iv), which provides that no PDB offset

---

[10] The Commissioner recognizes that the Appeals Council did not credit plaintiff for the $1,022.00 payment she made in September 2010 and accordingly agrees that plaintiff owes $10,215 (the $11,237.00 overpayment amount found by the Appeals Council less plaintiff's September 2010 payment). (Docket no. 13 at 4).

15

will apply to public disability benefits "under a law or plan of the United States based on service **all or substantially all** of which is employment [covered by Social Security]." *Id*. The Commissioner argues that the SSA has interpreted its regulation to comply with 42 U.S.C. § 424a(a)(2)(B)(iv) insofar as the SSA will only apply this exception where the public disability benefit is based on 85 percent service covered by Social Security. (Docket no. 15 at 4-5). The Commissioner asserts that the civil service annuity plaintiff receives was not based on at least 85 percent service covered by Social Security because her annuity was based on military service from October 11, 1976 to September 11, 1979 (covered for Social Security) and federal civil service from February 21, 1980 to November 21, 2008 (not covered for Social Security). (Docket no. 13 at 5). Because plaintiff's disability annuity was based almost entirely on employment that was not covered by Social Security, the Commissioner argues that the SSA properly failed to apply the PDB exception to her DIB. (Docket no. 15 at 5).

Finally, the Commissioner argues that there is no statutory or regulatory provision that prohibits application of the WEP and PDB offsets concurrently. (Docket no. 15 at 5). The Commissioner contends that the SSA regularly applies these provisions concurrently and there is no known court ruling finding this practice to be impermissible. *Id*. The Commissioner also argues that the WEP and PDB offsets have different purposes and goals. (Docket no. 15 at 5-6). According to the Commissioner, the purpose of the WEP offset is to eliminate the windfall for individuals who appear to have low income only because the majority of their income was covered by a separate pension system (like the civil service retirement system) rather than Social Security and it applies to all Social Security benefits. (Docket no. 15 at 6). By contrast, the PDB offset only applies to disability benefits and it serves as a mechanism to eliminate the possibility of a windfall for individuals who qualify for public disability benefits in addition to DIB. *Id*.

The Commissioner explains that the PDB offset limits an individual's total benefits (including DIB and any public disability benefits) to eighty percent of the individual's average current earnings covered by Social Security. *Id.* The Commissioner argues that the concurrent application of WEP and PDB offsets does not violate the Rehabilitation Act because the only differential treatment that is occurring here is between individuals with disabilities based on whether they receive other public disability benefits and the amount of those benefits. (Docket no. 15 at 7). In other words, the Commissioner argues that the offsets do not discriminate in any way between disabled and non-disabled individuals. (Docket no. 15 at 8).

Accordingly, the Commissioner argues that the PDB offset was applied properly to plaintiff's DIB concurrently with the WEP offset.

**The Appeals Council Properly Applied the PDB Offset to Plaintiff's DIB**

The Appeals Council's finding that plaintiff's disability insurance benefits were subject to the PDB offset beginning in November 2008 constitutes a proper application and interpretation of federal law.

The Commissioner and plaintiff clearly have differing views as to the meaning of the PDB offset provided for in 20 C.F.R. § 404.408(a)(2), requiring a consideration of the regulatory language. In pertinent part, that regulation provides

> (a) *When reduction required.* Under section 224 of the Act, a disability insurance benefit to which an individual is entitled under section 223 of the Act for a month (and any monthly benefit for the same month payable to others under section 202 on the basis of the same earnings record) is reduced (except as provided in paragraph (b) of this section) by an amount determined under paragraph (c) of this section if:
> *****
> (2) The individual first became entitled to disability insurance benefits after August 1981 based on a disability that began after February 1981, and

> (i) The individual entitled to the disability insurance benefit is also, for that month, concurrently entitled to a periodic benefit (including workers' compensation or any other payments based on a work relationship) on account of a total or partial disability (whether or not permanent) under a law or plan of the United States, a State, a political subdivision, or an instrumentality of two or more of these entities, and
> (ii) The individual has not attained age 65.

20 C.F.R. § 404.408(a)(2).

Focusing on 20 C.F.R. § 404.408(a)(2)(i), plaintiff argues that her civil service disability annuity does not qualify as a "periodic benefit" because she did not receive the disability annuity "on account of" her disability, but rather, received it based on her participation in a contributory retirement plan as an incident of her credited federal employment of 31 years and 8 months. (Docket no. 11-1 at 7). Plaintiff argues that having participated in this contributory retirement plan, she was guaranteed a return of an amount at least equal to her contributions either as an annuity or as a lump sum refund. (Docket no. 11-1 at 8). Plaintiff suggests that her disabled status gave her a basis for retirement under the CSRS at the age of 53 (though other categories permit retirement only once an individual is age 55 or older), but that her entitlement to the civil service disability annuity was not otherwise "on account of" her disability because she was guaranteed a return of an amount at least equal to the amount she had contributed. *Id.*

The Commissioner's position is that plaintiff became entitled to her civil service disability annuity "on account of" her disabled status because, based on her separation from federal service at age 53, she would not otherwise have been entitled to any civil service annuity benefits until age 62. (Docket no. 15 at 3). That is because under the CSRS, employees are entitled to an optional retirement annuity at age 55 following 30 years of service, at age 60 following 20 years of service, and at age 62 following five years of service. *See* 5 U.S.C. §§

8336(a), (b), and (f). Under other provisions not relevant to plaintiff, alternative enumerated circumstances provide that certain employees are entitled to an optional retirement annuity at different ages. An employee who separates from federal service before reaching the relevant retirement age based on years of service (as enumerated in 5 U.S.C. § 8336) is only eligible for a *deferred* retirement annuity beginning at age 62 and provided that the employee completed five years of service. *See* 5 U.S.C. § 8338(a). The only relevant exception is for employees such as plaintiff who become disabled at an earlier age following five years of federal service who thereby become eligible for a disability annuity. *See* 5 U.S.C. § 8337(a). The Commissioner contends that having left her federal employment at age 53, plaintiff would not have become eligible for any civil service annuity benefits until age 62 if she had not become eligible for a disability annuity. Accordingly, the Commissioner asserts that plaintiff's civil service disability annuity is "based on" her disability.

Clearly, a contest between the parties as to the proper interpretation of what constitutes a periodic benefit "on account of a total or partial disability" exists and both positions have some merit. Plaintiff makes an interesting argument that the contributory nature of the civil service disability annuity she receives distinguishes it from other federal workers' compensation programs. (Docket no. 11-1 at 7-9). Ultimately, however, this Court is not searching for the "best" argument, but is constrained by the standard that the Commissioner's interpretation is entitled to deference so long as it is reasonable and permissible. *Chevron, U.S.A., Inc. v. National Resources Defense Council, Inc.*, 467 U.S. 837 (1984); *Giattina v. Chater*, 916 F. Supp. 555, 557 (E.D. Va. 1996).

Under this standard, the Commissioner's argument cannot be said to be so unreasonable or impermissible that it must be set aside. To the contrary, though plaintiff's argument is

19

interesting as a theoretical matter, the Commissioner's interpretation of the statutory meaning of "on account of a total or partial disability" read alongside the underlying purpose of the PDB offset renders the Commissioner's position more persuasive. Under the Commissioner's interpretation, this statutory language requires only that (1) the benefit is a periodic benefit to which an individual is concurrently entitled, (2) the entitlement to the benefit is based on worker's compensation or a work relationship, and (3) the entitlement is on account of a total or partial disability. The record before this Court plainly reveals that (1) plaintiff became entitled to a monthly civil service disability annuity concurrently with her Social Security DIB beginning in November 2008 (AR 71), (2) plaintiff's entitlement to the civil service disability annuity was based on her work relationship with the federal government consisting of 31 years and 8 months of credited service (AR 71), and (3) plaintiff became entitled to the civil service disability annuity only "on account of" her disabled status because she would not have received any CSRS annuity until age 62 but for her disability. Moreover, the statutory language "on account of" a disabled status does not indicate that entitlement to the public disability benefit must be *solely* because of a disability. As such, plaintiff's civil service disability annuity appears to fit squarely within the plain language of the PDB provision, which subjects her DIB to the PDB offset.

While plaintiff may be correct that her motion presents an issue of first impression in arguing that *concurrent* application of the WEP and PDB offsets is improper when a claimant is simultaneously receiving a civil service disability annuity, it is worth noting that other courts have upheld application of the PDB offset to Social Security DIB when a claimant is simultaneously entitled to the same civil service disability annuity to which plaintiff is entitled.[11] In *Riding v. Astrue*, the plaintiff had served in the U.S. Army from 1969 to 1972 and then

---

[11] As discussed during the hearing on March 22, 2013, the Commissioner's position is that there is no "concurrent" application of the WEP and PDB offsets in this case since the application of the PDB offset in and of itself reduces the plaintiff's DIB to the cost of living increase in the amount of $31.00 a month.

worked as a civil service military technician with the Utah National Guard, during which time he earned retirement coverage under the federal CSRS. *Riding v. Astrue*, No. CV-10-0220-CI, 2011 WL 3652772, at *1 (E.D. Wash. Aug. 19, 2011). Following his retirement because of a disability, the SSA determined that the plaintiff's DIB award was subject to the PDB offset based on his entitlement to a civil service disability annuity. *Id.* Though he apparently conceded the applicability of the PDB offset because of his civil service disability annuity, the plaintiff challenged the SSA's calculation of the *amount* of the PDB offset based on computation of plaintiff's average current earnings under 20 C.F.R. § 404.408(c). *Id.* at *1-3. Never even questioning that the PDB offset was properly applicable, the *Riding* court determined that the SSA's calculation of plaintiff's average current earnings was correct and affirmed the Commissioner's decision.[12] *Id.* at *3; *see also Prather v. Shalala*, 844 F. Supp. 239 (D. Md. 1993) (upholding – without any question about propriety of application of PDB offset – application of PDB offset to a claimant receiving a CSRS disability annuity who challenged what constituted his "average current earnings" for calculating *amount* of the PDB offset).

Similarly, in *Francis v. Sullivan*, the plaintiff had been awarded a CSRS disability annuity under 5 U.S.C. § 8337 after retiring from civil service due to a psychiatric disorder. *See Francis v. Sullivan*, No. 92-2466, 1993 WL 22463, at *1 (8th Cir. Feb. 4, 1993) (unpublished). Because of his entitlement to the CSRS disability annuity, the SSA applied the PDB offset and reduced plaintiff's DIB. *Id.* The plaintiff challenged application of the PDB offset, arguing that his CSRS disability annuity was not a public disability benefit subject to the PDB offset because it was actually "deferred compensation." *Id.* The plaintiff also argued that the PDB offset provision was unconstitutional. *Id.* Engaging in a *de novo* review of the district court decision

---

[12] Given that the PDB offset eliminated the claimant's entire DIB, with the exception of the protected cost of living increases, the WEP offset was not applied. *See id.* at *2 n.2.

and noting that it was giving "appropriate deference" to the agency's interpretation of the Social

Security Act, the court affirmed the SSA's decision. In pertinent part, the court stated

> The payments at issue are made monthly, they are made on
> account of a disability, and they are authorized by federal law. We
> agree with the district court that these payments are subject to the
> section 424a offset provision [*i.e.*, the PDB offset].

*Id.* Beyond her argument that she objects to the concurrent application of the WEP and PDB

offsets, discussed in more detail below, there is no principled difference between the application

of the PDB offset to plaintiff's DIB and the application of the PDB offset to the plaintiffs in

*Riding, Prather,* and *Francis.*

For these reasons, the undersigned recommends a finding that the Commissioner

correctly found plaintiff's civil service disability annuity to subject her DIB to the PDB offset.

The next question is whether, having found that plaintiff's DIB is subject to the PDB

offset, the exception in 20 C.F.R. § 404.408(b)(2)(ii) applies to plaintiff. The Commissioner and

plaintiff also disagree about the meaning of the exception contained in this provision. In

pertinent part, this regulation provides that the PDB offset in paragraph (a)(2) is not to be made if

> The benefit is a Veterans Administration benefit, **a public
> disability benefit (except workers' compensation) payable to a
> public employee based on employment covered under Social
> Security**, a public benefit based on need, or a wholly private
> pension or private insurance benefit.

20 C.F.R. § 404.408(b)(2)(ii) (emphasis added). Plaintiff argues that this exception applies to

her because her public disability benefit is payable to her "based on" employment that was

covered under Social Security. (Docket no. 11-1 at 11-12). Because this section does not

contain a limit that employment must have been "fully" covered under Social Security, plaintiff

contends that it applies to her since she received income that was covered under Social Security

in addition to income that was not covered by Social Security. (Docket no. 11-1 at 12).

The Commissioner contends that this exclusion is derived from a statute that provides in pertinent part that the PDB offset should not apply to "benefits under a law or plan of the United States based on service **all or substantially all** of which is employment as defined in section 410 of this title [*i.e.*, covered by Social Security]." 42 U.S.C. § 424a(a)(2)(B)(iv). Interpreting its regulation to comply with this statute, the Commissioner argues that the SSA only applies this exclusion where the public disability benefit at issue is based on 85 percent service covered by Social Security. (Docket no. 15 at 4-5). In particular, under POMS § DI 52125.001(A)(4), the SSA interprets the phrase "substantially all" to mean 85 percent or more of covered service. In a 1983 SSA ruling concerning the meaning of the phrase "substantially all," the SSA found that Congress's inclusion of this phrase indicated that "Congress intended that the public disability benefit would be excluded from causing offset only where all of the State and local service was covered or only where an amount of such service closely approaching all was covered." *Title II: What Constitutes "Substantially All" State or Local Covered Employment for Purposes of Excuding Offset (Against Disability Benefits)*, 1983-1991 Soc. Sec. Rep. Serv. 22 (S.S.A. 1983). Accordingly, the SSA found that, absent more definitive guidance from Congress, "it is reasonable to consider the 'substantially all' requirement to be satisfied when 85 percent of the employment in question was covered by an agreement entered into pursuant to section 218 of the Social Security Act." *Id.*

Here, the SSA's reasonable interpretation of its own regulation comports with the relevant statutory provision and is entitled to deference. *Barnhart v. Walton*, 535 U.S. 212, 222 (2002) ("In this case, the interstitial nature of the legal question, the related expertise of the Agency, the importance of the question to administration of the statute, the complexity of that administration, and the careful consideration the Agency has given the question over a long

period of time all indicate that *Chevron* provides the appropriate legal lens through which to view the legality of the Agency interpretation here at issue. ... For these reasons, we find the Agency's interpretation lawful.").

Conferring the proper deference to the Agency's interpretation that this exception only applies where an individual has 85 percent service covered by Social Security, it is clear that plaintiff's limited covered employment does not meet the statutory requirement that her service was "all or substantially all" covered by Social Security. The record shows that plaintiff's civil service disability annuity was based on military service from October 11, 1976 to September 11, 1979 (covered for Social Security) and federal civil service from February 21, 1980 to November 21, 2008 (not covered for Social Security). (AR 34). Information received by the SSA from the U.S. Office of Personnel Management ("OPM") showed that plaintiff's civil service disability annuity was not based on at least 85 percent Social Security Covered Service. *Id.* Thus, because plaintiff's civil service disability annuity was based almost entirely on employment that was not covered by Social Security and was not based on at least 85 percent Social Security covered service, the SSA properly failed to apply the PDB exception to plaintiff's DIB.

Accordingly, because the application of the PDB offset to plaintiff's DIB based on plaintiff's receipt of a civil service disability annuity constitutes the correct application of the law, the undersigned recommends a finding that the Appeals Council's conclusion regarding application of the PDB offset was based on substantial evidence in the record and application of the correct legal standard.

**There is no Prohibition to Applying WEP and PDB offsets concurrently to DIB[13]**

Plaintiff also objects to the decision of the Appeals Council insofar as it concurrently applies the WEP and PDB offsets to plaintiff's DIB. The Commissioner is correct, however, that there are no known judicial decisions finding that concurrent application of the WEP and the PDB offsets is impermissible. To the contrary, this Court has previously upheld the concurrent application of the WEP and PDB offsets to DIB when a plaintiff is simultaneously receiving a CSRS disability annuity. In *Giattina v. Chater*, the plaintiff challenged the application of the PDB offset in 42 U.S.C. § 424a(a)(2)(b) and 20 C.F.R. § 404.408(a) to his DIB based on plaintiff's concurrent receipt of a federal disability retirement annuity. *Giattina v. Chater*, 916 F. Supp. 555, 556 (E.D. Va. 1996) *aff'd*, 125 F.3d 848 (4th Cir. 1997). In *Giattina*, this Court noted that following several appeals within the SSA, a third ALJ decided that plaintiff's benefits were subject to the WEP, a decision that was upheld by the Appeals Council, and much like the posture of the instant case, unchallenged by plaintiff by the time of the appeal. *Id.* at 556 n.1. The Court affirmed the Commissioner's final decision that plaintiff's DIB was subject to the PDB offset because of his federal disability retirement annuity despite the fact that plaintiff's DIB was also subject to the WEP offset.[14] *Id.* at 558. Notably, the Court expressed no concern whatsoever regarding the concurrent application of the WEP and PDB offsets.

---

[13] As stated earlier, because the SSA's calculation that the PDB offset based on plaintiff's CSRS disability annuity payment of over $5,000 a month exceeded plaintiff's DIB even without the WEP offset, the issue of having both offsets applied concurrently really is a red herring. (AR 32-37).

[14] It should be noted that the plaintiff in *Giattina* presented a different issue than the issue that is currently before the Court in contesting the application of the PDB offset to his DIB. Giattina's argument was about the meaning of the regulation insofar as it concerned the *timing* of his disability, rather than the nature of his periodic benefit. *Giattina v. Chater*, 916 F. Supp. 555, 556-57 (E.D. Va. 1996). The plaintiff – and the court's – focus was on the phrase "first became entitled" in 20 C.F.R. § 404.408(a)(2). *Id.*

Moreover, the WEP and PDB offsets serve sufficiently different purposes and goals such that concurrent application does not appear problematic.[15] The WEP uses a modified calculation for determining the initial amount of Social Security primary insurance amounts when a person has earned income that is covered by Social Security and income that is not covered by Social Security during his or her career. *Riding,* 2011 WL 3652772 at *2 n.2 (citing *Das v. Department of Health and Human Servs.,* 17 F.3d 1250, 1252 (9th Cir. 1994)). Because Social Security benefits are progressive, the purpose of the WEP is to eliminate the windfall effect for individuals who appear to have a lower income because the majority of their income was covered by a separate pension system but not by Social Security. *See generally* Social Security Administration, SSA Publ'n No. 05-10045, Windfall Elimination Provision (2013), *available at* http://ssa.gov/pubs/10045.pdf. On the other hand, the PDB offset is only applied to disability benefits earned during covered and non-covered employment. *Riding,* 2011 WL 3652772 at *2 n.2.

Moreover, the purpose of the PDB offset is to overcome the problem that a typical worker injured during the course of his employment and eligible for both state and federal benefits would receive compensation for his disability that exceeded the amount of his take-home pay prior to the disability. *See Richardson v. Belcher,* 404 U.S. 78, 83 (1971). Because Congress was concerned that this situation reduced the incentive of a disabled worker to return to the job, impeding the rehabilitative efforts of state programs, Congress enacted the PDB provision in order to limit total state and federal benefits to eighty percent of the employee's average prior earnings prior to the disability. *Id.*

---

[15] The SSA's own regulations indicate that current application of the WEP and PDB offsets is possible. In POMS § DI 52125.001, the section describing rules for applying the PDB offset, the SSA indicates that WEP is another offset that may apply and that "WEP may apply even if PDB offset does not apply and vice versa." POMS § DI 52125.001(B)(2).

Plaintiff also argues that the concurrent application of the WEP and PDB offsets to her Social Security DIB is unlawful because it constitutes a systematic form of unlawful discrimination on the basis of plaintiff's physical disability that runs afoul of the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.* (Docket no. 11-1 at 12-13). Plaintiff claims that because of her disability, she is being deprived of Social Security benefits that would be paid to other CSRS retirees receiving annuities. (Docket no. 11-1 at 14). The Commissioner argues that because individuals without disabilities are not eligible for Social Security DIB, the only form of "discrimination" here is between disabled individuals who receive other public disability benefits and those who do not. (Docket no. 15 at 7). Moreover, the Commissioner contends that Congress cannot be violating the Rehabilitation Act by choosing how to disburse its own limited funds among disabled individuals simply by making a decision that disabled individuals concurrently eligible for other public disability benefits should receive lower Social Security DIB. *Id.*

As an initial matter, the PDB offset has been upheld numerous times over constitutional challenges based on due process and equal protection. *See, e.g.*, *Richardson*, 404 U.S. at 84 (finding PDB offset was rationally based and free from invidious discrimination and did not violate Fifth Amendment Due Process Clause or Fourteenth Amendment Equal Protection Clause); *Francis*, 1993 WL 22463, at *1 (unpublished) (upholding application of PDB to plaintiff's DIB based on his entitlement to civil service disability annuity over plaintiff's argument that the PDB offset provision was unconstitutional as applied to a civil service disability annuity); *Prather*, 844 F. Supp. at 241 (upholding application of PDB offset to plaintiff receiving civil service disability annuity over plaintiff's argument that the statutory construction violates due process and equal protection by treating federal workers with "non-covered" wages

differently). Overall, these decisions stand for the proposition that the PDB offset survives

rational basis scrutiny under the Constitution because (whether the alleged discrimination is

asserted as between federal workers/others with non-covered wages and employees with covered

wages like in *Prather* or as between disabled employees who receive compensation from

worker's compensation and those who receive compensation from private insurance/tort claim

awards as in *Richardson*) the legislative classification is not based on a suspect class and is

rationally related to a legitimate goal.[16]

Plaintiff attempts to get around these binding decisions by contending that the

discrimination is between herself and other similarly situated federal employees receiving non-

disability CSRS annuity benefits whose Social Security benefits would not be subject to the PDB

offset provision. The Commissioner is correct, however, that because Social Security DIB are

only available for individuals with disabilities, there is no discrimination here between disabled

and non-disabled individuals. The sole differential treatment is between disabled individuals

who receive public disability benefits in addition to Social Security DIB and those who do not

receive public disability benefits in addition to Social Security DIB. Because there is no

differential treatment on the basis of disability, this differential treatment does not run afoul of

the Rehabilitation Act or the Constitution.

---

[16] As the court stated in *Prather*,

> Congress's decision to exclude non-covered wages from the average current
> earnings calculation in Section 424a is rationally related to the goal of
> preserving scarce resources in cases where the individual receives benefits from
> other sources. Congress's unwillingness to include non-covered wages reflects
> an understanding that individuals such [as plaintiff] receive benefits from
> agencies such as CSRS that may in fact exceed those SSA would pay in a
> similar case. Depending upon the extent of the non-SSA payment, an individual
> who previously had both covered and non-covered employment may end up
> with a total monthly payment greater than, or less than, an individual who
> earned the same amount in covered employment only. The statutory scheme
> chosen by Congress is a rational legislative choice. This Court should not, and
> indeed cannot, substitute the "best" statute (as the Court sees it) for the one
> passed by Congress.

*Prather*, 844 F. Supp. at 241.

28

Absent a statute, regulation, or judicial decision prohibiting concurrent application of the WEP and PDB offsets and in light of the different purposes served by these offsets, it is not possible to say that the concurrent application of those two offsets is improper. Accordingly, and particularly in light of precedent in this Court permitting the concurrent application of these two offsets, the undersigned recommends a finding that the Appeals Council's decision was based on substantial evidence in the record and application of the correct legal standards.

## CONCLUSION

Based on the above, the undersigned recommends a finding that the Commissioner's final decision was supported by substantial evidence and that the proper legal standards were applied in evaluating the undisputed facts. Accordingly, it is recommended that plaintiff's motion for summary judgment (Docket no. 11) be DENIED, the Commissioner's motion for summary judgment (Docket no. 12) be GRANTED, and the Commissioner's final decision be AFFIRMED IN PART. The only need for clarification is that the plaintiff is entitled to a credit of $1,022.00 for the payment made toward the amount of the $11,237.00 overpayment.

## NOTICE TO PARTIES

**Failure to file written objections to this Report and Recommendations within fourteen (14) days after being served with a copy of this Report may result in the waiver of any right to a *de novo* review of the determinations contained in the Report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

Entered this 27th day of March, 2013.          _____/s/_____

John F. Anderson
United States Magistrate Judge
John F. Anderson
United States Magistrate Judge

Alexandria, Virginia